**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 22-cv-01644-NYW-SKC

BANDIMERE AUTO-PERFORMANCE CENTER, INC., d/b/a BANDIMERE SPEEDWAY,
LORRAINE BANDIMERE, and
JOHN BANDIMERE, JR.,

      Plaintiffs,

v.

MARK B. JOHNSON, in his official and individual capacities as Executive Director of the
Jefferson County Health Department,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on two motions: (1) Defendant Mark B. Johnson's ("Dr. Johnson" or "Defendant") Motion to Dismiss Plaintiffs' Amended Complaint ("Motion to Dismiss" or "Motion") [Doc. 27, filed November 3, 2022]; and (2) Defendant's Request for Judicial Notice in Support of Defendant's Motion to Dismiss Plaintiffs' Amended Complaint ("Motion for Judicial Notice") [Doc. 28, filed November 3, 2022]. Upon careful review of the Motions and corresponding briefing, the entire case file, and the applicable case law, the Court respectfully **GRANTS** the Motion to Dismiss and **GRANTS** the Motion for Judicial Notice for the reasons stated herein.

## BACKGROUND

**I.    Factual Background**

The following facts are drawn from the First Amended Complaint and Jury Demand ("First Amended Complaint"), [Doc. 15], unless otherwise indicated, and are taken as true for the

purposes of the instant Motion.  This action arises from various executive orders ("EOs") issued by Governor Jared Polis and public health orders ("PHOs") issued by the Colorado Department of Public Health and Environment ("CDPHE") related to the COVID-19 pandemic, and certain actions taken by the Jefferson County Public Health Department ("JCPH" or "Department") to enforce those orders.  *See generally* [*id.*].  At particular issue in this case is EO 2020 091 and PHO 20-28.  *See* [*id.* at ¶¶ 12, 17, 26–27]; *see also* [Doc. 27-7; Doc. 27-6].  EO 2020 091 implemented certain measures that allowed "many Coloradans to return to work and recreation in the great outdoors while . . . maintain[ing] a sustainable level of Social Distancing." [Doc. 27-7 at 1].  PHO 20-28, in turn, set forth the requirements for implementation of EO 2020 091 by, *inter alia*, imposing limitations on the manner in which businesses could operate, including the number of people allowed to gather for an event.  *See* [Doc. 15 at ¶¶ 26–27, 29–31]; *see generally* [Doc. 27-6].

Dr. Johnson is the former Executive Director of JCPH.  [Doc. 15 at ¶ 9].  Plaintiff Bandimere Auto-Performance Center, Inc., d/b/a Bandimere Speedway ("Bandimere Speedway") is an outdoor racetrack in Jefferson County, Colorado, and seats 23,500 people.  [*Id.* at ¶¶ 8, 27].  Plaintiffs Lorraine Bandimere ("Ms. Bandimere") and John Bandimere, Jr. ("Mr. Bandimere") own and operate Bandimere Speedway.  [*Id.* at ¶ 7].  Bandimere Speedway planned to hold a "Fourth of July God and Country Rally" (the "Rally") in July 2020.  [*Id.* at ¶¶ 35–36].

On June 6, 2020, Mr. Bandimere appeared on "Wake Up! With Randy Corporon," a radio show that is "broadcast each Saturday morning on 710KNUS." [*Id.* at ¶ 38].  During the show, Mr. Bandimere and Randy Corporon ("Mr. Corporon") "discussed their opposition to the ongoing COVID-19 saga and the unconstitutional overreach of emergency powers and public health

agencies." [*Id.*].  On June 29, 2020, Dr. Johnson sent a letter to Plaintiffs[1] voicing his concerns

that the Rally would violate PHO 20-28 and requested that Plaintiffs submit a plan by 5:00 p.m.

on July 1, 2020 that detailed the protocols that Bandimere Speedway had put in place to ensure the

Rally complied with the PHO.  [*Id.* at ¶ 39]; *see* [Doc. 27-10 at 1–2].

On July 2, 2020, JCPH filed an emergency complaint for injunctive relief in the Jefferson

County District Court, seeking a temporary restraining order, as well as preliminary and permanent

injunctive relief, "to restrain Bandimere Speedway from violating" EO 2020 091 and PHO 20-28

(the "enforcement action").  [Doc. 15 at ¶ 40]; *see also* [Doc. 34-1].[2]  The complaint noted Mr.

Bandimere and Mr. Corporon's discussion of PHO 20-28 during the radio show.  [Doc. 34-1 at

¶ 44]; *see also* [Doc. 15 at ¶ 41].  The court granted the emergency motion the same day it was

filed.  *See* [Doc. 27-11].

Plaintiffs allege that, as a result of JCPH's enforcement action, "the Colorado Department

of Revenue Licensing Authority sent . . . armed liquor enforcement agents to Bandimere Speedway

and summarily suspended Bandimere Speedway's liquor license."  [Doc. 15 at ¶ 43].  Soon

thereafter, "Coors Beer pulled its sponsorship of Bandimere Speedway" and has not renewed the

sponsorship since.  [*Id.* at ¶¶ 45–46].  Plaintiffs allege that JCPH's actions have caused them

---

[1] Although the letter was directed to Mr. Bandimere and Bandimere Speedway, the Court will refer
to Plaintiffs collectively given that Plaintiffs do the same in the First Amended Complaint.  *See,
e.g.*, [Doc. 15 at ¶ 39].  However, the Court will distinguish between Plaintiffs where such
distinctions are necessary.

[2] The emergency complaint does not reference EO 2020 091, but instead references EO 2020 123.
*See generally* [Doc. 34-1].  However, according to the First Amended Complaint, "EO 2020 091
was amended and extended on June 30, 2020," pursuant to EO 2020 123.  [Doc. 15 at ¶ 12].
Plaintiffs appear to challenge both EO 2020 091 and EO 2020 123.  *See* [*id.*].  Indeed, Plaintiffs
expressly "refer to EO 2020 091" in the First Amended Complaint "because EO 2020 123 does
not contain the details of EO 2020 091" but, instead, "solely contains the amendments to EO 2020
091."  [*Id.* at ¶ 12 n.1].  Thus, the Court understands any references to EO 2020 123 also refer to
EO 2020 091, and vice versa.  Ultimately, however, the identity of the specific EO is immaterial
for purposes of resolving the Motion to Dismiss.

"significant financial loss" from their "numerous profit centers," including ticket sales, sponsorships, concessions, and fuel.  [*Id.* at ¶¶ 44, 48].

Plaintiffs assert two causes of action in the First Amended Complaint, both pursuant to 42 U.S.C. § 1983.  The first is for retaliation in violation of the First Amendment.  [*Id.* at ¶¶ 49–57]. For support, Plaintiffs allege, *inter alia*, that "Dr. Johnson retaliated against Mr. Bandimere for speaking out against the Jefferson County PHO's [sic] when he directed the Jefferson County Attorney's Office to file an Emergency Complaint for Injunctive Relief including an *ex parte* Temporary Restraining Order."  [*Id.* at ¶ 52].  The second cause of action appears to be a *Monell* claim,[3] alleging that Dr. Johnson executed an unspecified "custom, practice or procedure," [*id.* at 11], and his "enforcement of PHO 20-28 exceeded state law and EO 2020 091."  [*Id.* at ¶ 59]. Plaintiffs seek relief in the forms of (1) a judgment declaring that the conduct at issue in the First Amended Complaint violated the United States Constitution and 42 U.S.C. § 1983; (2) compensatory damages; and (3) attorneys' fees, expenses, and costs.  [*Id.* at 12].

***Bandimere I.***  On September 2, 2020, prior to this case, Plaintiffs initiated a separate civil action in the Jefferson County District Court against numerous defendants, including JCPH and Dr. Johnson ("*Bandimere I*").  *See* [Doc. 27-13].  Plaintiffs' 137-page complaint contained statutory and constitutional challenges to the Governor's EOs, as well as PHOs issued by the CDPHE and JCPH, including EO 2020 091 and PHO 20-28.  [*Id.* at ¶ 13].  Plaintiffs asserted 10 causes of action, [*id.* at 99–133], each of which was allegedly "grounded in . . . the Colorado Constitution and Colorado state statutes and other Colorado state laws, as enforced by and through

---

[3] Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), government entities can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell*, 436 U.S. at 690.

42 U.S.C. §§ 1983 and 1988." [*Id.* at ¶ 363]. Relevant here, Plaintiffs' third, fourth, and tenth claims were made under the Fourteenth Amendment, among other statutes. [*Id.* at 105, 108, 130]. Moreover, with the exception of their first, eighth, and ninth claims, Plaintiffs' remaining causes of action alleged violations of 42 U.S.C. § 1983. [*Id.* at 103–23, 130]. For relief, Plaintiffs requested, *inter alia*, that the court strike down as unconstitutional all of the EOs and PHOs raised in the complaint. [*Id.* at 136–37]. In addition, Plaintiffs specifically requested "Declaratory Relief pursuant to C.R.S. §§ 13-51-106, *et seq.*, and C.R.C.P 57" and "Injunctive Relief pursuant to C.R.S. §§ 13-51-106, *et seq.*, and C.R.C.P. 65." [*Id.* at 136]. Plaintiffs also claimed they did "not waive, and . . . expressly reserve[d] for adjudication as federal questions in the federal courts, all of their rights, remedies, and claims grounded in the United States Constitution and U.S. Constitutional jurisprudence." [*Id.* at ¶¶ 3 n.3, 363].

On November 2, 2020, the *Bandimere I* defendants moved to dismiss the complaint primarily for failure to state a claim. *See* [Doc. 27-14]. The court granted the motion "in its entirety" on December 5, 2021, finding, *inter alia*, that

> [t]he [challenged] Orders undoubtedly bear a real and substantial relation to the public health and safety of Coloradans. They do not constitute, beyond all question, a plain, palpable invasion of the Plaintiffs' constitutional rights. The Orders are necessary to protect the health and safety of Coloradans. Furthermore, it is implausible that the Plaintiffs can negate every conceivable basis that supports the Orders during this global pandemic.

[Doc. 27-17 at 41]. Plaintiffs subsequently pursued an appeal of that order on March 14, 2022, [Doc. 27-18], which the Colorado Court of Appeals later dismissed with prejudice on September 19, 2022, [Doc. 27-19].

## II.   Procedural Background

Plaintiffs initiated this action on July 5, 2022, by filing a Complaint and Jury Demand against Dr. Johnson and Governor Polis. [Doc. 2]. Plaintiffs filed the operative First Amended

Complaint on September 28, 2022, wherein Dr. Johnson is the only remaining defendant.  [Doc. 15].  On November 3, 2022, Dr. Johnson filed the instant Motion to Dismiss, seeking dismissal of the First Amended Complaint pursuant to Rule 12(b)(6) on various grounds, including res judicata, collateral estoppel, qualified immunity, sovereign immunity under the Eleventh Amendment, and failure to state a claim.  *See* [Doc. 27].  The same day, Dr. Johnson filed the Motion for Judicial Notice, requesting that the Court take judicial notice of the exhibits he filed in support of the Motion to Dismiss.  *See* [Doc. 28]; *see also* [Doc. 27-1 to Doc. 27-19; Doc. 28-1 to Doc. 28-19]. The Motion to Dismiss is fully briefed, and is thus ripe for disposition.  *See* [Doc. 34; Doc. 44]. Plaintiffs did not respond to the Motion for Judicial Notice, and the deadline to do so has long passed.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, and a "formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "'across the line from conceivable to plausible.'" (citation omitted)).  Courts

must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

The Court will first resolve the Motion for Judicial Notice, and then turn to the Motion to Dismiss.

### I.  Motion for Judicial Notice

In the Motion for Judicial Notice, Dr. Johnson asks the Court to take judicial notice of the documents that he filed with the Motion to Dismiss, either because they are incorporated by reference in the Complaint or because they are court filings made in *Bandimere I*.  *See generally* [Doc. 28].  The Court has reviewed the proposed documents and finds that judicial notice is appropriate.  Indeed, the Court may take judicial notice of undisputed court documents and matters of public record as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir. 2011) (citation omitted) (noting that under Federal Rule of Evidence 201, judicial notice may be taken "whether requested or not," and "at any stage of the proceeding"). And the Court may take judicial notice of filings in related cases, "both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).  The *Bandimere I* court documents are therefore properly noticed.  *See* [Doc. 27-12 to Doc. 27-19; Doc. 28-12 to Doc. 28-19]; *see also* [Doc. 34-1].

Similarly, while consideration of a Rule 12(b)(6) motion is generally limited to the four corners of the complaint, the Court may consider materials outside the complaint if the documents

are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity. *See Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). Thus, the Court may consider the EOs and PHOs submitted by Defendant when deciding the Motion to Dismiss, as those documents are referenced in the Complaint and Plaintiffs do not dispute their authenticity. *See* [Doc. 27-1 to Doc. 27-11; Doc. 28-1 to Doc. 28-11].[4] Accordingly, the Motion for Judicial Notice is **GRANTED**.

## II.   Motion to Dismiss

Dr. Johnson raises three primary grounds for relief in the Motion to Dismiss. First, he argues that Plaintiffs' claims are barred by res judicata and collateral estoppel because Plaintiffs could have raised their claims in *Bandimere I*, but failed to do so. [Doc. 27 at 16–22]. Second, Dr. Johnson argues that Plaintiffs fail to state any claims against him in his official or individual capacities for violation of Plaintiffs' rights under the First and Fourteenth Amendments. [*Id.* at 22–32]. Third, Dr. Johnson argues that he is entitled to qualified immunity for the claims made against him in his individual capacity, and sovereign immunity under the Eleventh Amendment with respect to the claims made against him in his official capacity. [*Id.* at 32–37].

As discussed below, the Court finds that Defendant's first argument—res judicata and collateral estoppel—is dispositive of the Motion to Dismiss. However, because sovereign immunity under the Eleventh Amendment is a jurisdictional matter, the Court first addresses this issue before turning to Defendant's first argument. *See Hennessey v. Univ. of Kans. Hosp. Auth.*, 53 F.4th 516, 527 (10th Cir. 2022) (observing that "the Eleventh Amendment imposes a jurisdictional limitation on a court's ability to hear a case against a state once raised by the state").

---

[4] Defendant filed the same exhibits with the Motion to Dismiss and the Motion for Judicial Notice. *Compare* [Doc. 27-1 to Doc. 27-19] *with* [Doc. 28-1 to Doc. 28-19]. In this Order, the Court will cite to the exhibits submitted with the Motion to Dismiss.

## A.     Eleventh Amendment

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  In other words, the Eleventh Amendment is a jurisdictional bar that "precludes anyone from suing an arm of the state or asserting a damage claim against state officers in their official capacities." *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017); *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009) ("The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state.").  This immunity extends to suits by citizens against their own state or its agencies in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  The Eleventh Amendment thus bars suits against state officials sued in their official capacities for monetary damages pursuant to § 1983. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (stating that § 1983 "does not abrogate a state's sovereign immunity").

Here, Plaintiffs sue Dr. Johnson, in part, in his official capacity as the former Executive Director of JCPH. *See* [Doc. 15].  "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).  Thus, a suit against Dr. Johnson in his official capacity is the equivalent of a suit against JCPH. *See Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) (finding that a suit against a sheriff was in fact a suit against the county for which the sheriff worked).  Thus, the question before the Court is whether JCPH is an "arm of the state" of Colorado.

"The Supreme Court 'has repeatedly refused to extend Eleventh Amendment sovereign immunity to counties.'" *Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020) (quoting *N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006)). "It follows that county officers sued for damages in their official capacity are generally not entitled to Eleventh Amendment immunity." *Id.* Nevertheless, the Tenth Circuit looks to "four primary factors" to determine whether an entity constitutes an arm of the state: (1) the "character ascribed to the entity under state law;" (2) the "autonomy accorded the entity under state law," or the degree of control the state exercises over the entity; (3) the entity's finances, i.e., "the amount of state funding the entity receives and . . . whether the entity has the ability to issue bonds or levy taxes on its own behalf;" and (4) "whether the entity in question is concerned primarily with local or state affairs," examining the agency's function, composition, and purpose. *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007). The burden of proving an Eleventh Amendment immunity defense rests with the party asserting it. *Hennessey*, 53 F.4th at 532.

Dr. Johnson does not address the *Steadfast* factors in his Motion to Dismiss. *See* [Doc. 27 at 35–37]. Instead, he cites a case from the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit) for the proposition that "[w]here county officials are sued simply for complying with state mandates that afford no discretion, they act as an arm of the State." [*Id.* at 36 (quoting *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999))]. Based on this framework, Dr. Johnson contends that he was acting as an arm of the state because he was "following the statutory mandates of the Colorado Disaster Emergency Act and the Governor's and CDPHE's emergency public health orders," and therefore "could not have chosen whether to comply with the requirement to enforce those orders in the County." [*Id.* at 36–37].

However, Dr. Johnson fails to cite any authority from the Tenth Circuit that adopts the Sixth Circuit's test in *Brotherton*.  *See* [*id.*].  Indeed, the cases that Dr. Johnson cites from this District all employed the *Steadfast* factors mentioned above.  *See* [Doc. 44 at 14 (citing *Est. of Goodwin v. Connell*, 376 F. Supp. 3d 1133, 1145–46 (D. Colo. 2019); *Schwartz v. Jefferson Cnty. Dep't of Human Servs.*, No. 09-cv-00915-WJM, 2011 WL 1843309, at *2 (D. Colo. May 16, 2011); *Wise v. Arapahoe Cnty. Dep't of Hum. Servs.*, No. 20-cv-01952-MEH, 2021 WL 981318, at * 6 (D. Colo. March 16, 2021)];[5] *see also Couser*, 959 F.3d at 1023 ("Courts use the *Mt. Healthy/Steadfast* factors to determine whether an entity is state or local.").

By failing to discuss any of the relevant factors necessary to this Court's determination as to whether JCPH is an arm of the state, Dr. Johnson has not met his burden of persuasion on this issue.  Therefore, the Court declines to grant any relief with respect to Dr. Johnson's Eleventh Amendment defense.  *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) ("[A] court may raise the issue of Eleventh-Amendment immunity sua sponte but, unlike subject-matter jurisdiction, it is not obligated to do so.").

---

[5] These cases referred to the *Steadfast* factors as "*Mount Healthy* factors," as the United States Supreme Court set forth the factors relevant to the Eleventh Amendment immunity analysis in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977).  *See Goodwin*, 376 F. Supp. 3d at 1145 ("Courts in this District have consistently applied the *Mount Healthy* factors to hold that county departments of human services constitute "arms of the state" for purposes of Eleventh Amendment immunity."); *Schwartz*, 2011 WL 1843309, at *2 ("[C]ourts in this district have repeatedly applied the *Mount Healthy* factors to hold that Colorado county human services departments are arms of the state for purposes of the Eleventh Amendment."); *Wise*, 2021 WL 981318, at * 6 (relying upon *Goodwin* and *Schwartz* to resolve the question of whether "Colorado's county-level departments of human services . . . are arms of the state and as such enjoy Eleventh Amendment sovereign immunity.").

B.       **Res Judicata and Collateral Estoppel**

Next, Dr. Johnson argues that Plaintiffs' claims in this case are barred by claim preclusion and issue preclusion—also known as res judicata and collateral estoppel, respectively—because Plaintiffs could have raised the same claims in *Bandimere I* but failed to do so.

Claim preclusion and issue preclusion are similar bases for dismissal pursuant to Rule 12(b)(6).  *See, e.g.*, *Carter v. City of Emporia*, 815 F.2d 617, 619 n.2 (10th Cir. 1987) (explaining that "[t]he preclusive effects of prior adjudication are traditionally subsumed under the general doctrine of res judicata, used to refer to both claim preclusion and issue preclusion").  As explained further below, the Court finds that claim preclusion applies to bar Plaintiffs' claims in this action.

Under the United States's Constitution's Full Faith and Credit Clause, as implemented to federal courts in 28 U.S.C. § 1738, a federal court must give a state-court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (holding that a § 1983 claim not raised in state court was precluded from being raised in subsequent federal case).  The preclusive effect of *Bandimere I* is thus determined by Colorado law.  *See id.*

A second judicial proceeding is precluded by a prior case when there is "(1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions."  *Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005).  The party against whom claim preclusion is sought must have had a full and fair opportunity to litigate the issue in the first proceeding.  *Byrd v. People*, 58 P.3d 50, 54 (Colo. 2002).  The party seeking preclusion bears the burden of setting forth facts sufficient to satisfy these elements.  *See Bebo Const. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 85 (Colo. 1999).

Dr. Johnson contends that all four elements have been met insofar as (1) *Bandimere I* concluded by final judgment when the state court granted the defendants' request for dismissal; (2) "Plaintiffs' complaint against Dr. Johnson in *Bandimere I* and their pleading in this case arise from the same facts and transactions"; (3) Plaintiffs' claims in this case "are the same as claims that were or could have been brought in *Bandimere I*"; and (4) this case and *Bandimere I* involve the same parties. [Doc. 27 at 17–22]. Dr. Johnson also argues that Plaintiffs "had a full and fair opportunity to litigate the issues they now assert" in this case. [*Id.* at 22]. The Court respectfully agrees, and will address each element in nonsequential order.

**Finality of Judgment.** "In order to be accorded preclusive effect, a judgment must be 'sufficiently firm' in the sense that it was not tentative, the parties had an opportunity to be heard, and there was an opportunity for review." *Carpenter v. Young By & Through Young*, 773 P.2d 561, 568 (Colo. 1989). There is no dispute that *Bandimere I* ended in a final judgment. Indeed, the state court granted the defendants' motion to dismiss, [Doc. 27-17], which Plaintiffs then appealed for review by the Colorado Court of Appeals. [Doc. 27-18; Doc. 27-19].[6]

**Identity or Privity Between Parties.** There is also no dispute that Plaintiffs in this case are the same plaintiffs from *Bandimere I*, and that Dr. Johnson was a defendant in *Bandimere I*. *See* [Doc. 27-13 at 1].

---

[6] Plaintiffs suggest that there was no finality of *Bandimere I* because in the order dismissing that case, the court "limited [its] injunctive relief to Plaintiffs' request for a preliminary injunction" and the elements related to such a request, including "a reasonable probability of success on the merits." [Doc. 34 at 32]. Plaintiffs contend that "[w]hen a trial court grants or denies a preliminary injunction, it is not adjudicating the ultimate rights of the parties." [*Id.*]. However, Plaintiffs decontextualize a single holding contained in the state court's 41-page order, and ignore the court's finding that Plaintiffs could not establish a reasonable probability of success on the merits because the court had *already* determined that they failed to state any plausible claims for relief. *See* [Doc. 27-17 at 39 ("Having found that the Plaintiffs do not present plausible claims for relief, they fail to . . . [establish] a reasonable probability of success on the merits.")].

***Identity of Subject Matter.*** "[I]dentity of subject matter can be evaluated by determining whether the same evidence would be used to prove the claims, even if the actions are different." *Foster v. Plock*, 394 P.3d 1119, 1127 (Colo. 2017). Here, Plaintiffs' claims against Dr. Johnson would turn, at least in part, on the same evidence—that is, JCPH's motivations for seeking to enforce the EO 2020 091 and PHO 20-28 by seeking a temporary restraining order— and involve the same timeline. Indeed, in *Bandimere I*, Plaintiffs alleged that "when JCPH state actors enforced the Target Orders in advance of the 4th of July, they violated the liberty of the Bandimeres and Bandimere Speedway customers to freely associate for personal and expressive purposes." [Doc. 27-13 at ¶ 448]; *see also, e.g.*, [*id.* at ¶ 455 (alleging "[t]he JCPH state actors forcing the Bandimeres to comply with PHO 20-28 have no compelling state interest in prohibiting freedom of association among the Bandimeres and their customers"); *id.* at ¶ 460 ("So long as Defendants enforce the Target Orders (and any subsequent Orders which may replace the Target Orders), each Plaintiff has suffered, and will continue to suffer, unjust loss of fundamental civil rights, liberty interests, and property rights in freedom of expression and association.")]. In the First Amended Complaint in this case, Plaintiffs allege, *inter alia*, that "Dr. Johnson either knew, or should have known, that bringing enforcement proceedings against Bandimere Speedway in retaliation for Mr. Bandimere's expression of his views in opposition to JCPH PHOs on a radio show constituted a violation of his First Amendment rights." [Doc. 15 at ¶ 55]. Thus, there is an identity of subject matter between this case and *Bandimere I*. *See Foster*, 394 P.3d at 1127 ("In this case, Foster's claims against both Wife and Plock turned on the same evidence—the content and disclosure of the same PREs—and involved the same timeline. Therefore, we conclude that there was identity of subject matter between this case and the prior action.").

***Identity of Claims for Relief.*** The identity of claims prong requires the Court to determine "whether the claim at issue in the second proceeding is the same claim that was (or could have been) brought in the first proceeding." *Id.* With respect to this element, Colorado has adopted the approach of the Restatement (Second) of Judgments, which provides that a judgment "extinguishes the plaintiff's claim, including all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Argus*, 109 P.3d at 609 (citing Restatement (Second) of Judgments § 24 (1982)) (alterations omitted). Claims arise out the same transaction "when they seek redress for essentially the same basic wrong, and rest on the same or a substantially similar factual basis." *Foster*, 394 P.3d at 1127 (quotation omitted). It is the underlying injury, not the proffered legal theory, that determines whether the identity of claims element is met. *Id.*

This action shares an identity of claims with *Bandimere I*. There can be no dispute that the claims Plaintiffs raise in this case arose out of the same underlying events at issue in *Bandimere I*— namely, JCPH's enforcement of EO 2020 091 and PHO 20-28 related to the Rally in July 2020.[7] Indeed, Plaintiffs allege violations of § 1983 in both actions. *Compare generally* [Doc. 15] *with* [Doc. 27-13]. In other words, Plaintiffs could have raised their current claims in *Bandimere I*, but simply did not.

---

[7] *Compare, e.g.*, [Doc. 15 at ¶¶ 54–55 (alleging that Dr. Johnson "directed the emergency civil action be filed prior to the Fourth of July God and Country Rally" and "knew, or should have known, that bringing enforcement proceedings against Bandimere Speedway in retaliation for Mr. Bandimere's expression of his views in opposition to JCPH PHOs on a radio show constituted a violation of his First Amendment rights")] *with* [Doc. 27-13 at ¶ 310 (alleging in *Bandimere I* that "Bandimere Speedway hosted their 4th of July God and Country Celebration" and "JCPH personnel went to Bandimere Speedway during the event to observe and collect evidence of noncompliance with the Target EO and the Target CDPHE PHO by Bandimere Speedway and their customers")].

Despite the shared identity of claims, Plaintiffs argue they were not required to bring their claims from this case in *Bandimere I* based on the "declaratory judgment exception," *see* [Doc. 34 at 29–31], which is "a limited exception to the doctrine of res judicata [that arises] where the prior judgment is *solely* a declaratory judgment." *Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 97 P.3d 215, 218 (Colo. App. 2003) (emphasis added), *aff'd*, 109 P.3d 604 (Colo. 2005); *see* Restatement (Second) of Judgments § 33 cmt. c  ("When a plaintiff seeks solely declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant. Instead, he is seen as merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant.  The effect of such a declaration, under this approach, is not to merge a claim in the judgment or to bar it.  Accordingly, regardless of outcome, the plaintiff or defendant may pursue further declaratory or coercive relief in a subsequent action.").

Notably, however, the declaratory judgment exception does not apply where a prior action involved requests for declaratory relief *and* coercive (i.e., injunctive) relief.  As explained by the Colorado Court of Appeals, "a prior judgment that adjudicated claims for both declaratory judgment and coercive relief creates a bar to further litigation of claims that could have been raised in the prior action."  *Argus*, 97 P.3d at 218; *see also Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, 564 F. App'x 345, 351 (10th Cir. 2014)  ("The declaratory judgment exception applies 'when the prior action involved *only* a request for declaratory relief.'  If any party seeks coercive relief—whether in a claim or counterclaim—then the declaratory judgment exception does not apply." (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010)).

There is no dispute that Plaintiffs sought both declaratory and coercive relief in *Bandimere I.  See* [Doc. 27-13 at 136 ("Declaratory Relief pursuant to C.R.S. §§ 13-51-106, *et seq.*, and

C.R.C.P 57" and "Injunctive Relief pursuant to C.R.S. §§ 13-51-106, *et seq.*, and C.R.C.P. 65")]. Nevertheless, Plaintiffs insist that the declaratory judgment exception applies because they failed to *obtain* either form of relief in that case.  *See* [Doc. 34 at 31 ("To date, the Colorado Supreme Court has not addressed the fact pattern here, where Plaintiffs sought both declaratory relief and injunctive relief and obtained neither.")].  Specifically, according to Plaintiffs, the declaratory judgment exception applies only where a party both seeks *and obtains* declaratory and injunctive relief in the prior action.  [*Id.*].  Plaintiffs support this argument by citing *Criste v. City of Steamboat Springs*, 122 F. Supp. 2d 1183 (D. Colo. 2000), where a court in this District stated that " [o]nce a party *seeks and obtains* coercive relief, the basis for applying the declaratory judgment exception evaporates, and ordinary rules of claim preclusion must apply."  *Criste*, 122 F. Supp. 2d at 1189 (emphasis added).  Plaintiffs rely solely upon this and another similar statement of the *Criste* court[8] to support their position that they should be permitted to pursue their claims in this case because they sought, but did not obtain, either declaratory or injunctive relief in *Bandimere I*. *See* [Doc. 34 at 31].

Respectfully, the Court is not persuaded.  At the outset, a plain reading of *Criste* makes clear that, when discussing the declaratory judgment exception, the court's analysis was focused on whether the plaintiff had *sought* both declaratory and injunctive relief in a prior action—not whether the plaintiff had also *obtained* such relief.  For instance, the court observed that "the overwhelming majority of courts . . . have held that where a party *seeks* coercive as well as declaratory relief, normal claim preclusion rules apply."  *Criste*, 122 F. Supp. 2d at 1189 (emphasis

---

[8] *See Criste*, 122 F. Supp. 2d at 1189–90 ("For these reasons, and in light of the persuasive authority from other jurisdictions, the Court finds that Colorado's highest court would hold that the *Atchison* exception has no application where the plaintiff has *sought and obtained* coercive relief in the initial proceeding." (emphasis added)).

added).   The court also noted that "[m]ost cases discussing the general declaratory judgment exception cite § 33 of the Second Restatement of Judgments." *Id.*   That section states in relevant part:

> When a plaintiff *seeks solely declaratory relief,* the weight of authority does not view him as seeking to enforce a claim against the defendant.  Instead, he is seen as merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant.  The effect of such a declaration, under this approach, is not to merge a claim in the judgment or to bar it.  Accordingly, regardless of outcome, the plaintiff or defendant may pursue further declaratory or coercive relief in a subsequent action.

Restatement (Second) of Judgments § 33 cmt. c (emphasis added).  The *Criste* court explained that the comments in the Restatement "make clear that where a party *seeks* both declaratory and coercive relief ordinary rules of claim preclusion should apply." *Criste*, 122 F. Supp. 2d at 1189 (emphasis added).  Notably, the court ultimately concluded that "because [the] [p]laintiff *sought* both coercive and declaratory relief in the previous state action," he was "barred from pursuing his § 1983 claims in this Court." *Id.* at 1190 (emphasis added).  Plaintiffs' argument in the Response ignores this entire discussion by the *Criste* court and, instead, they quote two statements out of context to support their position that they may bring their claims in this case because they sought, yet failed to obtain, declaratory and coercive relief in *Bandimere I. See* [Doc. 34 at 31].  The Court respectfully disagrees with Plaintiffs' narrow interpretation of *Criste*.

In any event, and despite Plaintiffs' arguments to the contrary, the Colorado Court of Appeals has since agreed that "a prior judgment that adjudicated claims for both declaratory judgment and coercive relief creates a bar to further litigation of claims that could have been raised in the prior action." *Argus*, 97 P.3d at 218.[9]  As previously mentioned, there is no dispute that

---

[9] Most of Plaintiffs' arguments regarding the declaratory judgment exception are based on an analysis of two cases decided by the Colorado Supreme Court: *Lane v. Page*, 251 P.2d 1078 (1952), and *Atchison v. City of Englewood*, 506 P.2d 140 (Colo. 1973).  *See* [Doc. 34 at 29–31].  The Court need not analyze the interplay between these cases because another court in this District

Plaintiffs sought both declaratory and injunctive relief in *Bandimere I*, and the state court's order granting the defendants' motion to dismiss "in its entirety" constituted an adjudication that resolved those claims, albeit not in Plaintiffs' favor.  [Doc. 27-17 at 41].

In sum, Plaintiffs' argument that this action is barred only if they had previously sought and obtained declaratory and injunctive relief is without merit.  Accordingly, the declaratory judgment exception does not apply to the facts of this case, and Plaintiffs' claims are barred.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)    The Request for Judicial Notice in Support of Defendant's Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 28] is **GRANTED**;

(2)    The Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 27] is **GRANTED**;

(3)    Plaintiffs' claims in the First Amended Complaint are **DISMISSED with prejudice**;[10] and

(4)    Defendant is entitled to his costs pursuant to Federal Rule of Civil Procedure 54(d) and D.C.COLO.LCivR 54.1.

---

and the Colorado Court of Appeals have already done so.  *See Criste*, 122 F. Supp. 2d at 1187–89; *Argus*, 97 P.3d at 218–19.  Relevant here, the Colorado Court of Appeals concluded as follows:

> [W]e read *Atchison* as creating a limited exception to the doctrine of res judicata where the prior judgment is solely a declaratory judgment.  We further conclude that *Lane v. Page* retains vitality insofar as it holds that *a prior judgment that adjudicated claims for both declaratory judgment and coercive relief creates a bar to further litigation of claims that could have been raised in the prior action.*

*Argus*, 97 P.3d at 219 (emphasis added).  Plaintiffs' Response does not mention *Argus* at all, despite the fact that it was decided after *Criste*.  *See* [Doc. 34 at 29–31].

[10] *See Phan v. Colo. Legal Servs.*, 769 F. App'x 520, 526 (10th Cir. 2019) ("Thus, the district court properly dismissed with prejudice all of Phan's claims against State Farm under the doctrine of res judicata."); *Seber v. Bank of Am., N.A.*, 713 F. App'x 801, 801 (10th Cir. 2018) (affirming dismissal "with prejudice on res judicata grounds").

DATED: July 10, 2023                 BY THE COURT:

Nina Y. Wang
United States District Judge